### UNITED STATES v. PORT OF PORTLAND.

(Circuit Court of Appeals, Ninth Circuit. August 4, 1924. Rehearing Denied September 2, 1924.)

#### No. 4233.

1. **Admiralty ⊕1, 19—Port of Portland subject to process of federal admiralty court, and intrenching local laws cannot be sustained.**

   Port of Portland, a municipal corporation, being suable for negligence of its employés and faults of its ships, is subject to process of court of admiralty, and local law intrenching on admiralty jurisdiction of federal courts cannot be sustained.

2. **Towage ⊕15(1)—Suit for injury from negligence of tug held in tort, and not contract.**

   Suit in personam by owner of tow against her tug for injuries to tow from tug's negligence *held* properly brought in tort, and not contract.

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Towage** ⚖➡**11(7)—Tug employed as mere motive power under orders of pilot held not liable.**

Where tug was employed as mere motive power of tow, and both vessels were exclusively under control of pilot not compulsorily employed, tug was not liable for collision with draw and abutments of bridge, where tug was properly equipped, and following of pilot's orders was not obviously improper.

**4. Towage** ⚖➡**11(1)—Duty of master to inform pilot of facts to aid movement of ship.**

It is duty of tug's master to advise pilot of any facts which would assist him in movement of ship, but master could not navigate ship, very purpose of taking on pilot being to put ship under control of one specially informed concerning tides, currents, channels, and other conditions of harbor.

**5. Towage** ⚖➡**15(2)—Injury to tow raises no presumption of tug's negligence.**

Mere fact that tow was injured raises no presumption of fault on part of tug.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Libel by the United States against the Port of Portland, a municipal corporation. From a decree dismissing the libel, the United States appeals. Affirmed.

The United States, owner of the steamship West Keats, filed a libel in personam against the port of Portland, a municipal corporation, to recover damages to the West Keats, a ship operated by the United States Shipping Board, acting through the Emergency Fleet Corporation, acting through the Columbia Pacific Shipping Company, an Oregon corporation. The libel was dismissed, and appeal was taken.

The tug Portland was operated by the servants and employés of the port. The managing agent of the West Keats requested the port of Portland to tow the ship on December 25, 1922, from the Southern Pacific dock down the Willamette river to a point called St. Johns, a movement in which it was necessary to pass through draws of two bridges, the railroad and the Broadway bridges. The West Keats lay with the dock on her port side and bow upstream, with forward draft of 9 feet, aft draft 21 feet 9 inches. The Keats was without power. The tug worked her way between the dock and the stern of the Keats, made fast at the port quarter of the Keats, and, moving stern first, pulled the ship stern first into the stream toward the draw of the railroad bridge.

The libel alleges that the tug allowed the Keats to turn diagonally in passing through the draws, so that the port side of the Keats struck the end of one draw and an abutment of the other; that in the towage through the bridges the tug proceeded stern first, and towed the Keats stern first. Damages are alleged to have been caused by the negligence of the servants of the port of Portland (1) in commencing the towage and taking the ship through the bridges without the aid of an additional tug; (2) in making the tug fast at the port side and at the stern of the Keats and attempting to tow stern first; (3) in failing to line up the Keats, so as to take her through the bridges at right angles to the draws.

Respondent denied that it towed or agreed to tow the Keats as alleged; denied negligence; pleaded that it was not requested by the libelant or its agents to perform a towing service; never agreed to do so, and furnished no vessel for such purpose, but did furnish a vessel merely as the motive or propelling power for the movement to be operated under the direction and control of the pilot, hired by the libelant. Answers were made to interrogatories appended to the answer.

It appears that, before the movement began, the marine superintendent of the Columbia Shipping Company employed one of the Columbia river pilots and

⚖➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

put him on the bridge of the Keats to direct the movement; that the pilot gave orders to the tug as to the place at which the tug should be made fast to the Keats, and generally was in charge of the movement; that the master and chief officer of the Keats were on the forecastle head and bridge, respectively, of the Keats, and saw the movements, but gave no orders to prevent the collision with the bridges. Libelant alleged lack of knowledge as to whether the pilot's orders were obeyed.

The District Judge held that the movement of the combined vessel and tow was under the control and direction of the pilot hired and employed by the libelant, and that the tug was merely to furnish the motive power for the movement and not "the brains in control thereof." The exceptions of respondent were sustained, because there was no averment in the libel or statement in the answer to the interrogatories that the officers or agents in charge of the tug failed to follow the orders of the pilot, or that the port of Portland contracted or agreed to move the vessel, or that the tug was not reasonably adequate for the purposes intended, or that she was not properly manned, or that respondent was asked to furnish any additional tug, or to do more than to furnish the propelling power under orders of the representative of libelant in charge of the movement.

John S. Coke, U. S. Atty., and MacCormac Snow, both of Portland, Or., for the United States.

Gus C. Moser and William C. Bristol, both of Portland, Or., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] We must overrule appellee's contention that jurisdiction is lacking in admiralty in personam against the port of Portland, upon the doctrine of governmental immunity for municipal acts done in furtherance of governmentally directed duties. Under the rule of Workman v. New York, 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314, followed by this court in The Thielbek, 241 Fed. 209, 154 C. C. A. 571, a municipal corporation, being suable for the negligence of its employés and the faults of its ships, is subject to the process of a court of admiralty, and, if an attempt were made by local law to intrench upon the admiralty jurisdiction of the courts of the United States, it could not be sustained.

[2] Libelant's theory in pursuing a remedy in tort, not in contract, is, we think, tenable. In The John G. Stevens, 170 U. S. 113, 18 Sup. Ct. 544, 42 L. Ed. 969, the Supreme Court reviewed many conflicting decisions of the District Courts, and held that a suit by the owner of a tow against her tug, as the offender, to recover for an injury to the tow by the negligence of the tug, is a suit ex delicto, and not ex contractu. While the proceeding in that case was held to be one in rem, the claim by the tow against the tug for damages by collision with a third ship was regarded as standing upon the same ground as a claim of the third vessel for damages against the tug.

[3] But the present case resolves itself within narrow bounds. The pilot had control of the movement. He was not employed by compulsion; nor was he an employé of the port of Portland. He was placed in control by the master of the Keats, who, with a crew, remained on board, and it was the duty of the tug to obey the pilot's directions. Of

course, if the pilot gave an order which was obviously regardless of approaching danger, and the master of the tug saw, or should have seen, that execution of the order meant danger, then the tug could be held at fault for not, of her own motion, changing her course. Surrender to a clearly improper order would not relieve the tug. In re Civilta and Restless, 103 U. S. 699, 26 L. Ed. 599; The Procida (D. C.) 243 Fed. 251; The E. G. Murray (C. C. A.) 278 Fed. 895.

[4] It would likewise be the duty of the master to advise the pilot of any facts which would assist him in the movement of the ship. The master, however, could not navigate the ship, for the very purpose of taking the pilot was to put the ship under the control of one specially informed concerning the tides, currents, channels, and other conditions of the harbor. The Tactician, Court of Appeals Cases (Eng.) 10 Ann. Cas. 378; The Duke of Manchester, 4 N. of C. E. & M. Courts, 575. It might be, too, that a tug, although an independent contractor, could be held liable for the consequences of a collision by reason of the negligence of her own servants, upon the ground that all who participate in a wrongful act, whether as principals or agents or servants, are jointly and severally liable for the consequences. Such a case was The Express, 52 Fed. 890, 3 C. C. A. 342. But there is no averment in the libel before us which takes the case out of the general rule laid down in Sturgis v. Boyer, 24 How. 110, 16 L. Ed. 591, followed in The Edgar Baxter, Fed. Cas. No. 4,278, and In re Walsh, 136 Fed. 557, 69 C. C. A. 267, and in The Stella (C. C. A.) 278 Fed. 939, that where a tug is employed by the master or owners of the tow as the mere motive power from one point to another, and both vessels are exclusively under the control, direction, and management of a pilot not compulsorily employed by the master, fault will not be imputed to the tug, provided, always, the tug is properly equipped and seaworthy. See, also, The Clarence Blakeslee, 243 Fed. 365, 155 C. C. A. 145.

[5] The mere fact that the tow was injured raises no presumption of fault on the part of the tug. We find no ground upon which to hold that a cause of action exists against the owner of the tug. Holding that the orders sustaining the exceptions and dismissing the libel were correct, the decree will be affirmed.

Affirmed.